IN THE
TENTH COURT OF APPEALS
No. 10-10-00044-CV


**CORYELL COUNTY, TEXAS,**

                                                                        **Appellant**

 **v.**

**MARY BETH HARRELL AND**
**ROBERT HARRELL,**

                                                                        **Appellees**

_____

**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. CAC-09-38,755**

## OPINION

Mary Beth and Robert Harrell filed a lawsuit against Don and Wynette Russell concerning an easement across the Harrells' property. The Harrells added Coryell County as a defendant to the suit and, in a second amended petition, specifically noted that the claim against the County was in the nature of a contest, pursuant to section 258.004 of the Texas Transportation Code, to the County's road map, which designated the disputed easement as a county road. The County filed a motion to dismiss for lack of jurisdiction which the trial court denied. The County appealed. Because the trial

court did not err in denying the County's motion, the trial court's order is affirmed.

**IMMUNITY**

In one issue, the County argues that the trial court erred in exercising jurisdiction over the County. Its argument is twofold: 1) that the Harrells' claim is actually a trespass to try title action for which immunity is not waived, and 2) that Chapter 258 of the Transportation Code does not provide a clear and unambiguous waiver of the County's immunity. We find that immunity is waived under Chapter 258.

*Law*

Sovereign immunity protects the State and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). Both types of immunity are common law doctrines, but the waiver of immunity has traditionally been left to the Legislature, assuming it to be "better suited to balance the conflicting policy issues associated with waving [sic] immunity." *Id*. at 58 (quoting *Wichita Falls State Hosp.*, 106 S.W.3d at 695). When dealing with these immunities, the Legislature has been required to express its intent clearly and unambiguously. *Id*. (citing *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994) and TEX. GOV'T CODE ANN. § 311.034 (West 2011) (codifying the clear and unambiguous standard)). Perfect

clarity, however, has not been insisted upon when the statute left no doubt about the Legislature's intentions. *Id*. The clear and unambiguous standard is never applied mechanically to defeat the law's purpose or the Legislature's intent. *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000). Therefore when a waiver of immunity has been necessary to make sense of a statute, the Texas Supreme Court has held that the waiver is clear and unambiguous. *Travis Cent. Appraisal Dist.*, 342 S.W.3d at 58 (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291-92 (Tex. 1995)).

An order which grants or denies a plea questioning the trial court's jurisdiction, such as the motion filed by the County, is reviewed de novo. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

### Characterization of Harrells' Claim

The County first argues that the Harrells' suit is properly characterized as a trespass to try title action. The County's argument implies that if the claim is a trespass to try title action, it cannot be a contest under Chapter 258 of the Texas Transportation Code. We disagree. Even if the claim is properly characterized as a trespass to try title action, we need not address this portion of the County's argument if we find an express waiver of governmental immunity. Because, as more fully discussed below, we have determined the Harrells' claim against the County is a contest under Chapter 258 of the Texas Transportation Code, the trial court did not err in denying the County's motion to dismiss for lack of jurisdiction on the County's assertion that the suit was a trespass to

try title action.

*Waiver by the Transportation Code*

The County next argues that Chapter 258 of the Transportation Code does not provide a clear and unambiguous waiver of the County's immunity.

*The Relevant Provisions*

Chapter 281 of the Transportation Code, initially enacted in 1981 and codified in the Transportation Code in 1995, provides that a county with a population of 50,000 or less may acquire a public interest in a private road *only* by purchase, condemnation, dedication, or a court's final judgment of adverse possession. TEX. TRANSP. CODE ANN. §§ 281.001, 281.002 (West 1999) (emphasis added). The statute is not retroactive. *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984).

But, Chapter 258, entitled CLARIFICATION OF EXISTENCE OF PUBLIC INTEREST IN ROAD BY ADOPTION OF COUNTY ROAD MAP and added to the Transportation Code in 2003, provides that, *notwithstanding* the limitations of Chapter 281, a county may *clarify* a public interest in a road by the adoption of a county road map. TEX. TRANSP. CODE ANN. § 258.001 (West Supp. 2011) (emphasis added). In other words, if there is some question about the public nature of a road a county thinks is within its control, Chapter 258 provides the means to clarify the county's claim to that road. To achieve a clarification,

> [t]he commissioners court of a county may propose a county road map
> that includes each road in which the county claims the existence of a

public interest:

> (1) under Chapter 281 or other law; or

> (2) as a result of having continuously maintained the road with public funds beginning before September 1, 1981.

TEX. TRANSP. CODE ANN. § 258.002(a) (West Supp. 2011).

The failure of the county to include a road in which the county has previously acquired a public interest by purchase, condemnation, dedication, or a court's final judgment of adverse possession on a county road map proposed and adopted pursuant to section 258.002, however, does not affect the status of the omitted road. *Id*. (g). In other words, if there is no question about the county's claim of a public interest in a road, the status of that road as a public road will not be affected if it is left off of the Chapter 258 county road map. Thus, when there is no question as to the status of a county public road, the road does not need to be included on the Chapter 258 county road map.

But when a road is included on a Chapter 258 county road map, a person who asserts a private right, title, or interest in that road may protest, either in person or in writing, the inclusion of the road in the county road map. *Id*. § 258.002(b). If a person protests, the county commissioners appoint a jury of view to determine the validity of a county's claim. *Id*. The determination of the jury of view is binding on the commissioners court and the map must be revised accordingly. *Id*. Once a Chapter 258 map is adopted, the map is conclusive evidence of the public's right of access over a

road included on the map and the county's authority to spend public money to maintain such a road. *Id*. § 258.003.

However, the map's conclusiveness is subject to section 258.004, the contest provision. Whether or not an oral or written protest is made, "a person asserting a private right, title, or interest in a road, in which the existence of a public interest is asserted under this chapter may contest the inclusion of the road in the county road map *by filing a suit in a district court* in the county in which the road is located…." *Id*. § 258.004(a) (emphasis added); *Bastrop County v. Samples*, 286 S.W.3d 102, 109 (Tex. App.—Austin 2009, no pet.). The contestant has two years from the date of the map's adoption to file a suit.

*Discussion*

The County acknowledges that it began the process of developing a county road map in 2008 pursuant to Chapter 258. The road about which the Harrells complain, CR 65, was included in that map. The Harrells protested the inclusion, and a jury of view denied the protest. No one disputed the Harrells' ability to take that action. And now the Harrells have contested the inclusion of the road on the Chapter 258 map by filing suit in district court.

Counties have been granted a powerful tool to clarify and resolve any of their various claims to roads in the county by simply including the road in a county road map. By this method, a county can forever establish its claim. To counter this sweeping

power given to counties, the Legislature balanced the rights of landowners that might be adversely affected by a county's claim by establishing a procedure to contest that claim in district court. While the statute might not be a model of perfect clarity, what *is* clear is that the Legislature, by enacting section 258.004, gave landowners the ability to sue a county to contest the county's claim of a public interest in a road and included in a county's Chapter 258 road map which the landowner contends is a private road. The Legislature specified the process and that process expressly included filing a suit in district court.

### *Conclusion*

The Legislature has thus expressly waived immunity from suit when a private person is challenging the county's assertion of a public interest in a road by including the road in a Chapter 258 county road map. In this instance, the County asserted a public claim to CR 65. The Harrells have availed themselves of the right given to them by the Legislature to challenge the public claim asserted. Thus, we hold that Chapter 258, and specifically section 258.004, clearly and unambiguously waives the County's immunity in contests to county road maps proposed pursuant to Chapter 258; and the trial court did not err in denying the County's motion to dismiss for lack of jurisdiction on this basis.

### *Limitation of Waiver of Immunity?*

The County argues that because it had received a dedication of the road by

Harrells' predecessors in interest, Chapter 258 is not a clear and unambiguous waiver of the County's immunity, and the Harrells cannot contest the county road map in district court. This argument is essentially one for a *limitation* of Chapter 258's waiver of immunity

*"Under this Chapter"*

The County contends that the language, "under this chapter," in section 258.004(a), the contest provision, means that a contest is only available if a county claims an interest in a road by having continuously maintained the road with public funds beginning before September 1, 1981. *See* TEX. TRANSP. CODE ANN. §§ 258.002(a)(2); 258.004(a) (West Supp. 2011) ("A person asserting a private right, title, or interest in a road in which the existence of a public interest is asserted *under this chapter* may contest the inclusion of the road in the county road map by filing a suit in district court in the county in which the road is located….") (emphasis added). Thus, the County argues, because it initially received a dedication of the road in controversy, it did not claim an interest "under this chapter."

As stated previously, Chapter 258 allows a county to *clarify* its interest in a road by proposing a county road map which includes roads the county claims are public through either (1) Chapter 281, or other law; or (2) by continuous maintenance. *Id*. §§ 258.001; 258.002(a). Pursuant to section 258.002, the commissioners court was not limited to including only roads that it had continuously maintained in its proposed

county road map.  If the Legislature meant for a Chapter 258 county road map to be limited to roads claimed by continuous maintenance, there would have been no purpose to include subsection (1) of section 258.002(a).  That is to say, if section 258.002(a) is only for the County's public interest in a road by continuous maintenance, as provided for in 258.002(a)(2), no purpose is served by having section 258.002(a)(1) as part of the statute.  The County claimed a public interest in the road on the Harrells' property, CR 65, which it contends was acquired through a dedication, and included it in the county road map.  If there was no question of the County's interest in CR 65 because it received the road pursuant to a valid dedication, it was not required to include the road on the Chapter 258 county road map and the omission of it from the map would not change the road's status.  *See id*. § 258.002(g).

But more importantly, for our purposes, the Legislature likewise put no limits on which of a county's claims could be contested under section 258.004(a).  By including the road in controversy in the county road map, the County asserted a public interest in that road under Chapter 258.  Thus, the language "under this chapter" in section 258.004(a) means the assertion of a public interest by any of the methods mentioned in section 258.002(a), not just continuous maintenance, through which a road could be placed on the county road map.[1]

---

[1] The County has only presented a minute entry of its purported public dedication of CR 65.  That entry states as follows:

*Burden of Proof*

The County also argues that because continuous maintenance is the only type of claim for which the Legislature specified the burden of proof, then necessarily it is the only type of claim that can be contested by the contest provision. By this argument, the County suggests the Legislature's express waiver of immunity in section 258.004(a) is limited by section 258.004(b). We disagree.

Generally, the burden of proof in a case is determined from the pleadings and rests upon the party against whom judgment must be entered under the pleadings if neither side introduced any evidence. *See Walker v. Money*, 120 S.W.2d 428, 431 (Tex. 1938). But, also generally, a party claiming the right to use another's land has the burden to prove that right. *See, e.g. Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979) (prescriptive easement); *Duff v. Matthews*, 311 S.W.2d 637, 640 (Tex. 1958) (necessity);

---

We, the undersigned landowners, hereby dedicate the road leading from the R. R. Shoaf residence to FM #1783 for public use. This dedicated road is to begin at the R. R. Shoaf residence on the A. Wells survey and extends in a northerly direction of approximately ¾ mile to said FM Road #1783 right of way.

We further realize that in dedicating this road for public use and upon it being accepted by the Commissioners' Court of Coryell County, Texas, and maintained with county machinery, we will be estopped to deny this dedication.

After the signatures of R. R. Shoaf, Mrs. Dennis Warden, Mrs. Kitty Smith, and John Shoaf, Sr. were notarized, the minute entry notes the following action:

On this the 14th day of May, 1962, came on to be considered the above dedication of R. R. Shoaf, Mrs. Dennis Warden, Mrs. Kitty Smith, and John Shoaf, Sr., and after due consideration by the Commissioners' Court and upon motion made and duly seconded, the Court voted to accept said dedication and enter same in the minute of the Commissioners' Court.

We express no opinion on the validity of this minute entry to establish a public dedication of the right of way.

*City of Mission v. Popplewell*, 294 S.W. 2d 712, 717 (Tex. 1956) (dedication); *County of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.—San Antonio 1994, writ denied) (implied dedication). Thus, it is normally the plaintiff who must introduce evidence of each element of a claim. If the plaintiff fails to prove each element by a preponderance of the evidence, the plaintiff loses.

Chapter 258 was enacted to help counties establish and clarify a public interest in roads in which the counties' claims existed before the enactment of Chapter 281 because as time goes on, counties lose the ability to provide firsthand knowledge of a road's origin. *See Bastrop County v. Samples*, 286 S.W.3d 102, 108 n. 5 (Tex. App.—Austin 2009, no pet.). In some of those types of cases, such as in implied dedications and prescriptive easements, continuous maintenance has been part of the evidence. *See, e.g. Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (implied dedication); *Schultz v. Shatto*, 237 S.W.2d 609, 612 (Tex. 1951) (prescriptive easement). Further, because of the passage of time, the only way a county could claim a public interest in a road might be by the county's continuous maintenance of the road. Thus, when a county places a road on a county road map under Chapter 258 and the only way it can claim the public interest in that road is by continuous maintenance, it makes sense, then, that a county would have the burden to prove the one thing it could still prove, that is, continuous maintenance because that type of evidence is primarily within a county's control. A county has the motive to establish its claim and has the greatest likelihood of access to the witnesses

and documents which may exist to verify its claim of public interest in a road that depends upon continuous maintenance by the county. Understanding that a county is asserting a particular type of claim to a road by continuous maintenance under section 258.002(a)(2), the Legislature simply clarified for this one type of claim, when contested under section 258.004(a), that the burden of proof is on the county. TEX. TRANSP. CODE ANN. § 258.004(b) (West Supp. 2011).

For all other claims to a public interest in a road under section 258.002, case authority, the ordinary rules of pleading, procedure and proof, and the nature of the interest that is being asserted provide the manner in which these contests will be decided. Thus, to the extent that the County's claim is a public right by dedication, the Harrells must defeat that claim by establishing, for example, a title superior to the claim of express dedication or a defective dedication. But to the extent the County claims as an alternative basis for the public interest in the road that it was continuously maintained by the County, the burden will be on the County.

### *Legislative History*

The County further contends that the legislative history of Chapter 258 supports its conclusion that a contest may be pursued only if a public interest in a road is claimed by continuous maintenance. We again disagree with the County's contention.

In our reading of the bill analysis attached to the Amicus brief in this case, we note that there was no limitation in the landowner's ability to contest the inclusion of a

road on a county road map. In the "Digest" portion of the House bill analysis, the paragraph describing the rights of a person asserting a private right, title, or interest in a road on a county road map ends with the sentence, "A landowner also could contest inclusion of a road on the county road map by filing a suit in district court within two years of adoption of the map." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, TEX. H.B. 1117, 78th Leg., R.S. (2003). Further, in the portion of the House bill analysis that includes what supporters said about the bill, it was noted that the bill would allow a fair but final determination of which county roads would be considered public roads; and if a landowner was dissatisfied with a review of his protest, the landowner "would have legal redress through the courts." *Id*. The Senate bill analysis did not discuss the contest provision. *See* SENATE RESEARCH ORGANIZATION, BILL ANALYSIS, TEX. H.B. 1117, 78th Leg., R.S. (2003). Thus, we do not believe the bill analysis supports the County's conclusion that a contest under Chapter 258 is limited to a road continuously maintained by the County.

We note that the Amicus fears that if the County's motion to dismiss is not granted, all landowners who have land adjacent to a county road in counties with a population under 50,000 would be authorized to file lawsuits claiming an interest in every road included on a county road map drawn pursuant to Chapter 258. This is what the statute authorizes. As a court, we cannot change that. The Amicus fears a flood of litigation. But its fears are unfounded. First, this is only the second appeal that

we have found from this chapter since the statute was enacted in 2003. Second, the statute applies only to a county that "initiates or completes compliance with the provisions" of Chapter 258 before September 1, 2011. *See* TEX. TRANSP. CODE ANN. § 258.007 (West Supp. 2011). The time to propose a county map under Chapter 258 has now closed. While there may be some cases working their way through the judicial system that are not yet reported, we are not aware of any; and given the prior appellate history of this Chapter, we doubt that much new litigation will be generated.

*Jury of View*

Although not argued by the County, the Russells, or the Amicus, and because jurisdiction is something that we must determine de novo, we acknowledge that the discussion of what the jury of view considers in section 258.002(b) could lead to an argument that the waiver of immunity is limited. *See id*. § 258.002(b) ("The commissioners court shall appoint a jury of view…to determine…after a hearing and an examination of the county's road maintenance records and other information, the validity of the county's claims of the existence of a public interest in the road." However, we believe the language "and other information" would include information other than maintenance records such as evidence of a dedication. Thus, this language does not limit the waiver of immunity expressed by Chapter 258. As previously discussed, the County appointed a jury of view to evaluate the Harrells' claim. There is nothing in the record before us to indicate what evidence, if any, the jury of view

considered. Regardless of whether the purported dedication was considered or not, this provision does not foreclose a contest by the Harrells to the County's claim of a public interest in CR 65.

## CONCLUSION

The County's sole issue is overruled, and we affirm the trial court's order.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Order Affirmed
Opinion delivered and filed December 28, 2011
[CV06]